# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

    **v.**                                   **Case No. 20-CR-140-PP-SCD**

RICHARD L. ALVA,

        Defendant.

---

## REPORT AND RECOMMENDATION
## THAT DEFENDANT'S MOTION TO SUPPRESS BE DENIED

---

In the early morning hours of June 20, 2020, Richard Alva was taken to a hospital after he was shot outside his Milwaukee home by an unknown assailant. While Alva lay bleeding in a hospital bed with the bullet still stuck in his leg, a police detective visited his room and inspected Alva's clothes, which hospital staff had placed in opaque plastic bags on the floor. Inside the pocket of Alva's shorts, the detective found bullets and a magazine to a firearm. Alva, a convicted felon, was charged in federal court with unlawful possession of ammunition by a prohibited person. He has moved to suppress the evidence taken from the hospital, arguing that it was seized and searched in violation of his Fourth Amendment rights. Because the detective did not violate Alva's Fourth Amendment rights in seizing or searching those items, I will recommend that his motion be denied.

## BACKGROUND

On August 11, 2020, a grand jury sitting in the Eastern District of Wisconsin returned an indictment charging Alva with being a felon in possession of ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). *See* ECF No. 1. Alva was arraigned on the charges and

entered a plea of not guilty. *See* ECF No. 3. The matter is assigned to U.S. District Judge Pamela Pepper for trial and to me for resolving pretrial motions. *See* 28 U.S.C. § 636; Fed. R. Crim. P. 59; E.D. Wis. Gen. L. R. 72. The trial date has been adjourned. *See* ECF No. 14.

On September 23, 2020, Alva filed a motion seeking to suppress all evidence and derivative evidence obtained from the seizure and search of his personal property. *See* ECF No. 11. Nicholas Rice, a detective with the Milwaukee Police Department, testified at an evidentiary hearing on the motion on December 7, 2020. *See* ECF No. 18; *see also* ECF No. 20. Detective Rice testified that he was working the late-night shift on June 20, 2020, when he was called to assist with a shooting investigation. ECF No. 20 at 6:3–14. He first went to the scene of the shooting, where he was told that the shooting victim, Richard Alva, was at St. Francis Hospital receiving treatment for a gunshot injury to his lower leg. *Id.* at 15:5–17.

Detective Rice then proceeded to the hospital to interview Alva and gather his clothing for evidence. *Id.* at 6:15–23, 7:9–16, 9:7–11. Alva was not under arrest at this time and was not suspected of a crime; Detective Rice considered Alva a crime victim. *Id.* at 16:21–17:3. When Detective Rice arrived at the hospital, he met briefly with the initial responding police officers. They told Detective Rice that Alva had been dropped off at the hospital by someone named "Enrique," who left before officers could speak with him, and that Alva had been shot in his right lower leg. *Id.* at 7:22–8:2, 16:3–8. Detective Rice also spoke with hospital staff. He was told that Alva was in emergency room three, that x-rays showed the bullet was still lodged in Alva's leg, and that Alva would soon need to be transported to another hospital for surgery on his leg. *Id.* at 8:3–7, 15:20–16:2, 16:15–20.

After talking with the responding officers and hospital staff, Detective Rice went to Alva's room. There, Alva was lying on a hospital gurney wearing a gown, and Detective Rice

could see the gunshot wound to Alva's leg. *Id.* at 8:8–9:6, 17:4–19:9; *see also* Hr'g Exs. 100, 101. Alva, who was in obvious pain at the time, told Detective Rice that he had been hanging out with some friends in the alley behind his residence when a car drove past and one of its occupants flashed a gun out the window and started firing in Alva's direction. *See* ECF No. 20 at 9:12–20, 19:10–20:8; *see also* Hr'g Ex. 105 at 2.

While Detective Rice was interviewing Alva, he noticed a few plastic drawstring bags lying "on the floor off to the side by the table." ECF No. 20 at 10:25–11:6, 21:23–22:10; *see also* Hr'g Exs. 102, 103, 104. The bags were white and opaque. ECF No. 20 at 22:18–22. Detective Rice didn't recall seeing any blood on the outside of the bags, and he couldn't tell what was inside the bags just by looking at them. *Id.* at 22:23–23:7. He asked Alva if his property was inside the bags, and Alva responded that it was. *Id.* at 22:11–17. Detective Rice then started going through the bags. He didn't feel the need to ask permission because Alva was not a suspect at the time and "[i]t's common practice that we—in our shooting investigations, that we go through the victim's clothing." *Id.* at 21:5–20.

Inside the plastic bags, Detective Rice located a pair of Nike tennis shoes, a pair of jeans shorts, and what appeared to be a woman's sweatshirt. *Id.* at 10:2–24; *see also* Hr'g Exs. 102, 103, 104. All three clothing items were stained with blood. *See id.* When Detective Rice was examining the shorts, he noticed that one of the pockets was weighted down. ECF No. 20 at 13:3–7. Detective Rice went over the outside of that pocket with his hand and felt a hard, rectangular object and two loose objects, which, based on his training and 18 years of experience as a police officer, appeared to be a magazine to a gun and bullets. *Id.* at 13:8–14. Detective Rice reached inside the pocket and removed the items—a black and silver Beretta magazine with five .9-millimeter unspent rounds inside the magazine and two loose .9-

millimeter unspent rounds. *Id.* at 13:15–20. In the other pockets Detective Rice found Alva's ID and money. *Id.* at 13:21–22.

Detective Rice kept the clothing, magazine, and bullets as evidence, but he returned the ID and money to the bags because those items "didn't pertain to the investigation." *Id.* at 10:23–24, 12:17–13:2, 13:23–14:10, 20:21–25. The items kept were later inventoried and taken to the Milwaukee police station to be held as evidence. *Id.* at 14:11–14. When asked about the magazine and bullets, Alva responded that he was intoxicated and didn't remember how they got there. *Id.* at 20:9–20. Alva also declined to consent to a search of his residence. *Id.* at 20:21–25.

Detective Rice testified that he's responded to hundreds of shootings in his career and that "on every shooting we respond to, it's very common practice where we collect the victim's clothing . . . for evidentiary purposes." *Id.* at 11:12–12:5. According to Detective Rice, "We're trained to do that [in the academy], and we're told to do that." *Id.* at 11:19–20. Detective Rice also explained that, for officer safety, it's standard operating procedure "to clear out the pockets" whenever an officer inventories an item of clothing. *Id.* at 12:18–13:2. However, as far as he knew, MPD didn't have a written policy requiring its officers to always collect the clothing of shooting victims. *Id.* at 29:15–22. When asked on cross-examination if officers follow this unwritten policy in every case like this with a gunshot-wound victim, Detective Rice responded,

> We do. We do for the – for the sake of the victim. It's not – We're not looking to add charges, it's a shooting victim. We're actually collecting their property, and the benefit for them because it proves that they were the victim of a shooting, whether it's gun holes – or bullet holes, bloody clothing, et cetera.

*Id.* at 26:9–22.

Detective Rice also testified that he had conducted similar investigations in the past at St. Francis Hospital. *Id.* at 28:17–23. It was his understanding that, whenever a shooting victim arrives at the hospital, security collects the victim's clothing, places the clothing in plastic or paper bags, and sets the bags aside in the victim's hospital room. *Id.* at 28:24–29:9. Detective Rice indicated that this policy was consistent with the policies of other hospitals in the area. *Id.* at 29:10–14.

The parties have submitted post-hearing briefs. *See* ECF Nos. 23, 24, 25, 26.[1] Accordingly, Alva's motion is now ready for disposition.

## DISCUSSION

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "Although in the context of personal property, and particularly containers,[2] the Fourth Amendment challenge is typically to the subsequent search of the container rather than to its initial seizure by the authorities, [Seventh Circuit] cases reveal some general principles regarding seizures." *United States v. Place*, 462 U.S. 696, 700–01 (1983). "In general, 'seizures of personal property are unreasonable within the meaning of the Fourth Amendment . . . unless . . . accomplished pursuant to a judicial warrant.'" *United States v. Burgard*, 675 F.3d 1029, 1032 (7th Cir. 2012) (quoting *Illinois v. McArthur*, 531 U.S. 326, 330 (2001)). "An officer may temporarily seize property without a warrant, however, if she has 'probable cause to believe that a container holds contraband or evidence of a crime' and 'the exigencies of the

---

[1] A few of the briefs were submitted late, by both parties.

[2] The bags containing Alva's clothing clearly fit the Supreme Court's definition of a container: "any object capable of holding another object." *United States v. Flores-Lopez*, 670 F.3d 803, 805 (7th Cir. 2012) (quoting *New York v. Belton*, 453 U.S. 454, 460 n.4 (1981)).

circumstances demand it or some other recognized exception to the warrant requirement is present.'" *Burgard*, 675 F.3d at 1032 (quoting *Place*, 462 U.S. at 701). The government bears the burden of establishing by a preponderance of the evidence that a warrantless seizure was justified pursuant to one of those exceptions. *See United States v. Basinski*, 226 F.3d 829, 833 (7th Cir. 2000) (citations omitted).

Here, the government argues that the warrantless seizure of Alva's clothing was justified under the plain-view exception to the warrant requirement. "The plain view doctrine applies 'if the officer has a legal right to be in the place from where he sees the object subject to seizure[, ] a lawful right of access to the object itself, and if the object's incriminating nature is immediately apparent.'" *Russell v. Harms*, 397 F.3d 458, 465 (7th Cir. 2005) (quoting *United States v. Cotnam*, 88 F.3d 487, 495 (7th Cir. 1996)). "The incriminating nature of an object is 'immediately apparent' if, under the circumstances, the officer has 'probable cause to believe that the item is linked to criminal activity.'" *Russell*, 397 F.3d at 465 (quoting *United States v. Bruce*, 109 F.3d 323, 328 (7th Cir. 1997)). "Probable cause requires sufficient evidence to lead a reasonable and prudent person to believe, not merely suspect, that a crime has been or is being committed." *Moya v. United States*, 761 F.2d 322, 325 (7th Cir. 1984) (citing *Brinegar v. United States*, 338 U.S. 160, 175–76 (1949)).

Alva appears to concede that Detective Rice had a legal right to be in the emergency room where he observed the bags containing Alva's clothing and thus that the first requirement of the plain-view exception is satisfied. *See* ECF No. 11 at 5; *see generally* ECF No. 25. He nevertheless argues that the government has failed to satisfy the latter two requirements.

6

As to the second requirement, Alva maintains that, even though Detective Rice was in the room lawfully, he did not have a lawful right of access to the bags of clothing because Alva retained a possessory interest in the items in the bags. *See* ECF No. 11 at 4–5; ECF No. 24 at 7–10; ECF No. 25 at 9. However, the facts of the case Alva primarily relies upon for this argument, *United States v. Neely*, 345 F.3d 366 (5th Cir. 2003), are distinguishable from the facts we have here. In *Neely*, the Fifth Circuit reversed the denial of a motion to suppress clothing seized from a hospital, concluding that the district court erred in finding the clothing lawfully seized pursuant to the plain-view exception. 345 F.3d at 368–71. The court determined that the hospital patient retained a valid possessory interest in the clothing and that the police did not have a lawful right of access to the clothing, which hospital staff had placed in bag and put inside a locker of the hospital's clothing storage room. *Id.* In other words, the clothing at issue in *Neely* was not in plain view; the police had to obtain permission from hospital staff to retrieve it from the storage room. Moreover, at the time the police seized the clothing from the hospital storage room, they had developed reason to believe that the patient was a suspect in an armed robbery. *See id.* at 367–68.

Turning to the facts of our case, Detective Rice observed the bags of clothing lying on the emergency room floor while he was interviewing Alva about the shooting that resulted in a gunshot wound to Alva's leg. There is no dispute that Detective Rice was lawfully present in the emergency room to investigate the shooting, and no further intrusion into Alva's possessory or privacy interests was required to gain access to the bags. *See Horton v. California*, 496 U.S. 128, 135–37 & n.7 (1990) (explaining that the lawful-access requirement is intended to prohibit the police from entering premises to make a warrantless seizure); *United States v. Berkowitz*, 927 F.2d 1376, 1388 (7th Cir. 1991) ("There is no dispute, assuming [the law

enforcement officer's] presence in the office was legal, about whether [the officer] had a lawful right of access to the documents he seized, since they were lying in the open in a place he had a right to be."); *Jones v. State*, 648 So. 2d 669, 678 (Fla. 1994) (explaining that the lawful-access requirement "ensures that the scope of the intrusion into Fourth Amendment rights is no greater than that already authorized in connection with the lawful entry"). Also, up until the magazine and bullets were discovered in Alva's shorts pockets, Detective Rice thought Alva was only a victim of a crime, not a suspect. Based on these facts, I find that Detective Rice had a lawful right of access to the bags. *See United States v. Davis*, 690 F.3d 226, 233–34 (4th Cir. 2012) (finding the lawful-access requirement satisfied where the police seized a bag of clothing from the hospital room floor of a gunshot wound victim). The government therefore has satisfied the second requirement of the plain-view exception.

The third requirement—whether the incriminating nature of the bags of clothing was immediately apparent to Detective Rice at the time he seized them—is a somewhat closer call. Alva argues that the incriminating nature of the bags could not have been immediately apparent because Detective Rice testified that he couldn't see inside them and because the outside of the bags was clean, with no blood stains on them. *See* ECF No. 11 at 5–6; ECF No. 25 at 3–5. The government argues that, based on the totality of the circumstances, Detective Rice had probable cause to believe that the bags contained evidence related to the shooting of Alva. *See* ECF No. 23 at 2–5; ECF No. 26 at 3–6.

Both parties cite nonbinding authority involving warrantless seizures of clothing from hospitals, but none of those cases are on all fours with our case. For example, in the three cases mostly strongly relied upon by the government, the incriminating nature of the seized clothing was found to be immediately apparent where the police observed bloody clothing in

8

plain view. First, in *United States v. Clancy*, the police observed bloody clothing on the emergency room floor that matched the description of the clothing worn by a robbery suspect, including a black ski mask. No. 19-6367, 2020 U.S. App. LEXIS 35567, at *1–3, 6 (6th Cir. Nov. 12, 2020). Second, the seizing officer in *United States v. Davis* testified that he saw "a bag underneath of [the patient's] hospital bed that contained clothing." 690 F.3d at 232. Based on that uncontradicted testimony, the Sixth Circuit inferred that the officer "could see the clothing through the bag or that the bag was partially open, revealing clothing." *Id.* at 235–36. And third, in *Sheffield v. United States*, the police observed bloody clothing that had been placed in a see-through biohazard bag by the patient's bed. 111 A.3d 611, 616, 620–21 (D.C. 2015).

Contrast these facts with the facts of our case. Detective Rice testified that, while interviewing Alva in the emergency room, he observed "solid white plastic bag[s] with drawstrings that were on top . . . on the floor off to the side by the table." ECF No. 20 at 11:2–4; *see also* Hr'g Ex. 104 (depicting the table Detective Rice was referring to). Detective Rice further testified that he could not see through the bags and that he did not recall seeing any blood on the outside of them. ECF No. 20 at 22:18–23:4. In other words, unlike in the cases cited by the government, Detective Rice could not tell what was inside the bags just by looking at them. *See id.* at 23:5–7. And "[t]here is nothing apparently incriminating about a plastic bag." *Moya*, 761 F.2d at 326.

At first glance, *Jones v. State*—a case Alva heavily relies upon—appears to be a closer match. The patient in that case, Harry Jones, had been taken to the emergency room and admitted to the hospital following a car accident. *Jones*, 648 So. 2d at 672. The police learned that the owner of the truck Jones had been driving at the time of accident was missing, so they

went to question Jones at the hospital. *Id.* "While in Jones' hospital room, the officers seized a bag of clothing that had been placed in the corner of Jones' room." *Id.* A few days later, the missing truck owner's body was found in a pond nearby the scene of the crash. *Id.* Forensic evidence revealed that "soil and pollen samples taken from the shoes and pants that were seized from Jones' hospital room were similar to samples taken from [the pond where the body was found]." *Id.* Jones was subsequently charged with and convicted of murdering and robbing the truck owner and stealing his truck. *Id.*

On appeal, the Florida Supreme Court determined that the plain-view exception did not justify the warrantless seizure of Jones' clothing in part because at the time the clothing was seized from the hospital the police only suspected, but did not have probable cause to believe, that Jones was involved in a crime. *Id.* at 677–78. Rather, "the probative value of the clothing did not become apparent until it was examined by an expert and the 'mud' was detected on Jones' shoes and pants." *Id.* at 678 (citing *Horton*, 496 U.S. at 136–37).

According to Alva, his case "is much more like" *Jones* than it is like *Clancy*, *Davis*, or *Sheffield* because "[Detective] Rice did not have probable cause to believe the bags contained contraband or evidence of a crime until he opened them and removed their contents." ECF No. 25 at 3–6. I disagree. Recall that Detective Rice went to St. Francis Hospital not only to interview Alva about the shooting but also to gather his clothing for evidence. *See* ECF No. 20 at 6:15–23, 7:9–16, 9:7–11. Based on experience, Detective Rice knew that the hospital had a policy of bagging shooting victims' clothes and setting them aside in the victims' hospital rooms. *Id.* at 28:17–29:9. When Detective Rice arrived at Alva's room, he observed Alva lying on a gurney wearing only a hospital gown, partially covered in a hospital blanket, and bleeding from his right lower leg. *Id.* at 8:8–9:6, 17:4–19:9; *see also* Hr'g Exs. 100, 101.

Detective Rice also observed the plastic bags lying on the floor, consistent with hospital policy. ECF No. 20 at 10:25–11:6, 22:2–10.

But here's the key detail. Detective Rice didn't immediately grab the bags, open them, and start rifling through Alva's belongings. Instead, he first asked Alva if his property was in the bags, and Alva confirmed that it was. *Id.* at 22:11–17. Thus, although Detective Rice could not see into or through the bags, he was nearly certain that the bags contained the clothing Alva had been wearing at the time he had been shot. And, given that Alva had been shot in his lower leg, with blood still dripping down his leg and foot—areas of the body that are usually covered by clothing or some type of footwear (even on a warm summer day)—it was reasonable for Detective Rice to believe that the clothing too would contain at least blood evidence, and possibly more (e.g., trace evidence, from the bullet or a bullet hole). Accordingly, even before opening them, it was readily apparent to Detective Rice that the bags contained items linked to criminal activity, regardless of whether he believed Alva was merely a victim of that crime. *See Davis*, 690 F.3d at 237 ("Davis has provided no authority to support imposing a requirement that the evidence be incriminating against the person from whom it is seized."); *Sheffield*, 111 A.3d at 620 ("It was readily apparent that the bloody clothes were evidence of a crime, regardless of whether Butler was a victim or a suspect."); *State v. Jackson*, 2020-Ohio-2677, at ¶ 26 (Ohio Ct. App. 2020) ("Although the officers initially believed appellant was a victim at the time of the seizure, the clothing remained evidence of the gunshot-related crime the officers were called to investigate. Thus, regardless of appellant's initial status as the victim, we find it is immaterial to the plain view analysis that the clothing did not immediately incriminate appellant as the perpetrator of any crime."); *Rodriguez v. State*, No. 01-17-00352-CR, 2018 Tex. App. LEXIS 10622, at *21 (Tex. Ct. App.

Dec. 20, 2018) ("Given the nature and the extent of the forensic evidence typically associated with gunshot injuries, such as blood, Deputy Della Sala could have reasonably inferred that the items on Appellant's person at the time of the shootings, particularly his shoes, would contain useful forensic evidence of a crime.").

In sum, I find that the bags containing Alva's clothing were validly seized under the plain-view exception to the warrant requirement.

The subsequent search of the bags, and of the pockets of the clothes found inside, also did not offend the Constitution. "It is true that, ordinarily, the police must obtain a warrant before opening a closed container because, by concealing the contents from plain view, the possessor creates a reasonable expectation of privacy." *United States v. Tolbert*, No. 11-CR-186, 2012 U.S. Dist. LEXIS 14287, at *18 (E.D. Wis. Feb. 7, 2012) (citing *United States v. Banks*, 514 F.3d 769, 773 (8th Cir. 2008)). "However, 'if the shape or other characteristics of the container, taken together with the circumstances in which it was seized . . . proclaim its contents unambiguously, there is no need to obtain a warrant.'" *United States v. Robles*, 37 F.3d 1260, 1264 (7th Cir. 1994) (quoting *United States v. Cardona-Rivera*, 904 F.2d 1149, 1155 (7th Cir. 1990)).

Applying these standards, I find that there was no need for Detective Rice to obtain a warrant before searching the bags and what he discovered inside them. Detective Rice went to the hospital to investigate the shooting of Alva and to seize his clothing, which Detective Rice knew would be placed by hospital staff inside bags and set aside in Alva's room. To the extent Alva retained any privacy interest in the contents of the bags when Detective Rice arrived at the hospital, observed Alva bleeding from his right lower leg, and saw the bags lying on the floor, Alva directly and explicitly waived his right to privacy when he confirmed that

12

the bags contained his property, and thus his clothing, which likely had evidentiary value relating to the shooting. *See Cardona-Rivera*, 904 F.2d at 1156 ("Asked what the packages contained, Luna said 'coke' . . . . He stripped the cloak of secrecy from the package. It was as if he had unwrapped it and pointed. Once Luna admitted that his package contained a contraband substance, no lawful interest of his could be invaded by the officers' opening the packages, whether on the spot or later in their office. No purpose would be served by insisting on a warrant in such a case."); *see also United States v. Tejada*, 524 F.3d 809, 813–14 (7th Cir. 2008) ("There isn't even the shadow of a doubt that had they applied for a warrant to search the bag, knowing what they knew, the warrant would have been issued. . . . The requirement of obtaining a warrant to search inside a container, when the container is known to contain contraband or other evidence of crime, is far from the core of the Fourth Amendment; as this case illustrates, there is a diminished risk of error or fabrication.").

The search of the bags also could likely be considered a valid inventory search, as the bags were lawfully seized pursuant to the plain-view exception, and Detective Rice testified that it was standard operating procedure, for officer safety, to empty the pockets of any clothing seized as evidence, *see* ECF No. 20 at 12:17–13:2. *See, e.g.*, *Commonwealth v. Charles*, No. 19-P-1230, 2020 Mass. App. Unpub. LEXIS 572, at *5 (Mass. Ct. App. June 24, 2020) ("We thus conclude that, as in *Fortuna*, the seizure of the defendant's clothing was lawful under the plain view doctrine. And once the clothing was lawfully seized, the police were authorized to conduct an inventory search without a warrant.") (citation and internal quotation marks omitted).

13

## CONCLUSION

Ultimately, the touchstone of any Fourth Amendment analysis is reasonableness. Here, Detective Rice was not on a fishing expedition seeking evidence of crimes without probable cause. He did not visit other hospital rooms or root around other patients' property. Instead, he limited his visit to a victim of a violent nighttime shooting. He knew from experience and the defendant's own statement that the defendant's clothes were in a bag on the floor, that they likely had evidentiary value with respect to the shooting, and that the victim was set to be moved to a different hospital in the very near future. The desire to obtain and inventory that evidence immediately was obvious and, ultimately, reasonable. For all the foregoing reasons, it is recommended that the defendant's motion to suppress, ECF No. 11, be **DENIED**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Crim. P. 59(b), and E.D. Wis. Gen. L. R. 72(c), whereby written objections to any recommendation herein, or part thereof, may be filed within fourteen days of service of this report and recommendation. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Failure to file a timely objection with the district judge shall result in a waiver of your right to appeal. If no response or reply will be filed, please notify the district judge in writing.

Dated at Milwaukee, Wisconsin, this 4th day of February 2021.

_____
STEPHEN C. DRIES
United States Magistrate Judge

14