UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                Plaintiff,

                                  Case No. 20-cr-140-pp

v.

RICHARD ALVA,

                Defendant.

**ORDER OVERRULING OBJECTION (DKT. NO. 28), ADOPTING RECOMMENDATION (DKT. NO. 27) AND DENYING MOTION TO SUPPRESS (DKT. NO. 11)**

On June 20, 2020, the defendant was shot outside his Milwaukee home. Dkt. No. 11 at 1. He was treated at St. Francis Hospital. Id. at 1-2. Shortly before 7:00 a.m. that day, Milwaukee Police Detective Nicholas Rice went to the defendant's bed in the St. Francis emergency room, where he found and opened several opaque plastic bags that contained the defendant's property, including his shorts. Id. at 2. Rice found in the pocket of the defendant's shorts a magazine with bullets and two loose bullets. Id. at 2-3. The defendant now stands charged with possession of ammunition by a convicted felon. Dkt. No. 1. He has asked the court to suppress the evidence seized at the hospital, arguing that the search and seizure of his property violated the Fourth Amendment. Dkt. No. 11.

On December 7, 2020, Magistrate Judge Stephen C. Dries conducted a hearing and the government called Rice as a witness. Dkt. No. 20. Judge Dries allowed the parties to file post-hearing briefs. Dkt. Nos. 24-27. On February 4, 2021, Judge Dries determined that the detective did not violate the defendant's

1

Fourth Amendment rights and recommended that this court deny the motion to suppress. Dkt. No. 27. The defendant timely objected. Dkt. No. 28. The government did not respond to the objection. See Dkt. No. 27 at 14 ("If no response or reply will be filed, please notify the district judge in writing."). The court will overrule the objections, adopt Judge Dries's recommendation and deny the motion to suppress.

I. **Standard of Review**

Rule 59(b) governs a district court's referral of motions to suppress to magistrate judges. Fed. R. Crim. P. 59(b). Parties have fourteen days to file "specific objections" to a magistrate judge's report and recommendation to a motion to suppress. Fed. R. Crim. P. 59(b)(2). When reviewing a magistrate judge's recommendation, the district judge must review *de novo* the portions of the magistrate judge's recommendations to which a party timely objects. 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b)(2), (3). The court may "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. §636(b)(1).

II. **Background**

A. Factual Background

Detective Nicholas Rice, an eighteen-year veteran of the Milwaukee Police Department, testified that he was working the late-shift on June 20, 2020, when he received a call to assist with a shooting investigation because of a "walk-in gunshot victim"—the defendant. Dkt. No. 20 at 5-6. Rice went to St. Francis Hospital to interview the victim and gather evidence, such as clothing. Id. at 6, 7, 9,15.

Rice testified that, in his eighteen years of law enforcement, he had responded to "over the high hundreds of shootings, and on every shooting that

2

we respond to, it's a very common practice" to collect the victim's clothing. Id. at 11. Officers are trained, and told, to do that. Id. The clothing provides evidence of the shooting, and may contain blood, spent casings or bullet fragments, or bullet holes. Id. at 11-12. In addition, it is standard operating procedure to inventory any items that are inside the clothing. Id. at 12. Rice admitted he was not aware of a written policy codifying this practice. Id. at 29.

After entering the hospital, Rice met briefly with responding officers, who told Rice that the defendant had been dropped off by an unknown individual in a red convertible. Id. at 7-8, 16. Hospital staff told Rice that the defendant was in emergency room three, that x-rays had been done, that a projectile was still in the defendant's leg and that he would be transported to Froedtert Hospital for surgery. Id. at 8, 15, 16. The defendant was not under arrest or suspected of a crime. Id. at 16.

Rice entered the defendant's room where he saw the defendant on a bed in a hospital gown with a gunshot wound to the lower right leg. Id. at 8, 17; Exs. 100, 101. The defendant gave a vague description of what happened. Id. at 14. The defendant told Rice he had been hanging out with friends in the alley when a car drove past, flashed a gun and started firing in his direction. Id. at 9, 19; Ex. 105 at 31 of 35.

Rice testified that it was common practice that once a victim arrived at the hospital, "the security" would put the victim's clothing in either a paper or plastic bag. Id. at 18. Rice noticed a few plastic drawstring bags lying "on the floor off to the side by the table." Id. at 11, 21-22; Exs. 102-104. The bags were white and opaque. Id. at 22. Rice did not see blood outside of the bags and could not tell what was in them. Id. at 22-23. He asked the defendant if the defendant's property was in the bags; the defendant responded yes. Id. at 22.

3

Rice started going through the bags without asking permission because the defendant was not a suspect and common practice was to go through the victim's clothing in an investigation. <u>Id.</u> at 21.

Rice discovered a pair of Nike tennis shoes, jeans shorts and a woman's sweatshirt (which Rice assumed was used to apply pressure to the wound), all stained with blood. <u>Id.</u> at 10; Exs. 102-104. When he held up the shorts, Rice felt weight on the right side of the shorts. <u>Id.</u> at 13. Rice went over the pocket with his hand and felt a hard, rectangular object and two loose objects, which from his eighteen years of experience felt to him like a magazine and bullets. <u>Id.</u> Rice reached in and removed a black and silver Beretta magazine with five .9mm unspent rounds inside the magazine and two loose .9 mm unspent rounds. <u>Id.</u> In the other pocket, Rice found the defendant's ID and money. <u>Id.</u>

Rice kept the clothing, magazine and bullets as evidence but returned the ID and money to the bags without inventorying them because they didn't pertain to the investigation. <u>Id.</u> at 10, 12, 14, 20. The other items—the clothes, the magazine and the bullets—were inventoried and held as evidence. <u>Id.</u> at 14. When Rice asked the defendant about the magazine and bullets, the defendant said he was intoxicated and didn't remember how they got there. <u>Id.</u> at 20. Rice asked for permission to search the defendant's house; the defendant refused and said that there was nothing there. <u>Id.</u> at 20.

According to Rice, in shooting investigations the officer will go through clothing at a hospital without consent regardless of whether the injured individual is a victim or a suspect. <u>Id.</u> at 21. It was Rice's understanding that it was the policy of the St. Francis security staff to collect clothing and put it in plastic or paper bags, then set it aside in the person's hospital room. <u>Id.</u> at 29. In Rice's experience, all hospitals had the same practice. <u>Id.</u>

4

B.  Motion to Suppress

In support of his motion to suppress, the defendant argued that (1) he had a constitutionally protected, reasonable expectation of privacy in the bags in his hospital room; (2) he had a possessory interest in the property even if he did not have a privacy or liberty interest; (3) Rice did not have a legal right to seize and search the hospital bags because the defendant did not consent; and (4) the appearance of the opaque, plastic hospital bags did not provide probable cause to immediately associate them with criminal activity. Dkt. No. 11.

C.  Post-Hearing Briefs

In one of its post-hearing briefs, the government argued that officers have a duty to investigate crimes, especially reported shootings. Dkt. No. 23 at 3. Acknowledging that the Seventh Circuit has not addressed whether officers in an emergency room can seize a victim's clothing, the government cited a Sixth Circuit case allowing officers to seize bloody clothing under the plain view exception and collecting cases from other jurisdictions holding the same. Id. (citing United States v. Clancy, 979 F.3d 1135, 1137-60 (6th Cir. 2020) and collected cases). The government also pointed out that Ascension Wisconsin, which operates St. Francis Hospital, turns over the victim's personal belongings—as a normal course of business—when requested by law enforcement as potential evidence to assist in an investigation. Id. at 4. The government asserted that the emergency room was not a constitutionally protected area, the bags were in plain view and the defendant was never a suspect. Id. The government further argued that when Rice discovered the magazine and ammunition in the shorts pocket during a routine inspection, he had probable cause to believe they were linked to the shooting and he lawfully seized the items. Id. In its reply brief, the government argued that, "Under the

5

plain view doctrine, the seizure of the bag of clothing was justified because, even though there was a meaningful interference with [the defendant's] possessory right, there was probable cause to associate the bloody clothes with criminal activity." Dkt. No. 26 at 4 (citing Illinois v. Gates, 462 U.S. 213, 235 (1983)).

The defendant filed both his brief in support of his motion to suppress and his reply to the government's response *after* the government filed its opposition brief. Dkt. Nos. 24, 25. Oddly, despite the government's apparent concession that the defendant had a possessory right to the clothing and items in the bags, the defendant argued that while he may not have had a reasonable privacy expectation in the emergency room, he had a possessory interest in the clothing he wore and the property that he carried in his clothing when he arrived at the hospital. Dkt. No. 24 at 7. Citing United States v. Neely, 345 F3d 366 (5th Cir. 2003), the defendant asserted that he had a possessory interest in his clothes. Id. at 7-8. He emphasized that he never voluntarily abandoned his property and asserted that there was reason to believe he would not have consented to a search had Rice asked, because he did not consent to the search of his home when Rice asked. Id. at 8. The defendant cited the officer's testimony that the opaque, plastic bags with drawstrings did not reveal their contents and the bags were not blood stained. Id. at 10.

D.   Recommendation

Judge Dries analyzed the seizure under the plain view exception to the warrant requirement. Dkt. No. 27 at 6. He noted that exception justifies the search if the officer has a legal right to be in the place where he sees the object subject to seizure, a lawful right of access to the object itself, and if the object's incriminating nature is imminently apparent. Id. (citing Russell v. Harms, 397

6

F.3d 458, 465 (7th Cir. 2005). Judge Dries noted that the defendant appeared to have conceded that Rice had the legal right to be in the emergency room where he observed the bags and found that the first requirement of the plain-view exception was satisfied. Dkt. No. 27 at 7.

As to the second requirement—lawful access to the item in question—Judge Dries distinguished Neely (the case upon which the defendant had put great emphasis) because the hospital staff in Neely had placed the bag of clothing inside a locker in the hospital's clothing storage room and because the police went to the hospital because they believed that Neely was the suspect in an armed robbery. Id. Judge Dries pointed out that in this case, Rice had observed the bags lying on the emergency room floor while interviewing the defendant about the gunshot wound to his leg, where he was lawfully present, interviewing the defendant about a shooting in which the defendant was the victim. Id. Judge Dries found that "no further intrusion into [the defendant's] possessory or privacy interests was required to gain access to the bags." Id. (citing Horton v. California, 496 U.S. 128, 135-37 & n.7 (1990)); United States v. Berkowitz, 927 F.2d 1376, 1388 (7th Cir. 1991); Jones v. State, 648 So.2d 669, 678 (Fla. 1994)). Judge Dries also pointed out that until he found the magazine and bullets in the shorts, Rice had believed that the defendant was a victim, not a suspect. Id. at 8. For these reasons, Judge Dries concluded that Rice had a lawful right of access to the bags and that the second requirement of the plain-view exception had been satisfied.

The third requirement for the plain view exception requires that the incriminating nature be immediately apparent to the officer when he seized them. Id. at 8. Judge Dries characterizes his determination on this requirement as a close call because Rice testified that he could not see inside the bags and

7

because the outsides of the bags were clean, with no blood on them. Id. After reviewing each of the cases cited by the parties, Judge Dries determined that Rice had probable cause to believe the bags contained evidence of the crime. Id. at 10. He found that Rice went to the hospital to (1) interview the defendant and (2) gather his clothing for evidence. Id. at 10. Judge Dries recounted that Rice knew the hospital had a policy of bagging the clothes and setting them in the victims' rooms. Id. He explained that when Rice arrived in the defendant's room, he'd seen the defendant on a gurney, wearing only a hospital gown, partly covered in a hospital blanket and bleeding from his leg. Id. Rice also had seen the plastic bags lying on the floor, consistent with his understanding of hospital policy. Id. at 11.

Judge Dries characterized as a "key detail" the fact that before opening the bags, Rice asked the defendant if the defendant's property was in the bags, and the defendant confirmed that it was. Id. That meant that even though Rice could not see into the bags, "he was nearly certain that the bags contained the clothing [the defendant] had been wearing at the time he had been shot." Id. Judge Dries concluded that "given that [the defendant] had been shot in his lower leg, with blood still dripping down his leg and foot—areas of the body that are usually covered by clothing or footwear (even on a warm summer day)—it was reasonable for Detective Rice to believe that the clothing too would contain at least blood evidence, and possibly more (e.g., trace evidence, from the bullet or a bullet hole)." Id. For that reason, Judge Dries concluded that even before Rice opened the bags, he had reason to believe that the bags contained "items linked to criminal activity, regardless of whether he believed that [the defendant] was merely a victim of that crime." Id. (citing cases).

8

Toward the end of the recommendation, as he summed up, Judge Dries said,

> Applying these standards, I find that there was no need for Detective Rice to obtain a warrant before searching the bags and what he discovered inside them. Detective Rice went to the hospital to investigate the shooting of [the defendant] and to seize his clothing, which detective Rice knew would be placed by hospital staff inside bags and set aside in [the defendant's] room. To the extent [the defendant] retained any privacy interest in the contents of the bags when Detective Rice arrived at the hospital, observed [the defendant] bleeding from his right lower leg, and saw the bags lying on the floor, *[the defendant] directly and explicitly waived his right to privacy when he confirmed that the bags contained his property, and thus his clothing, which likely had evidentiary value relating to the shooting.*

Id. at 12-13 (citing United States v. Cardona-Rivera, 904 F.2d 1149, 1155 (7th Cir. 1990)) (emphasis added).

Judge Dries concluded that Rice lawfully seized the bags under the plain-view exception and that the subsequent search, including the search of the pockets, did not offend the Constitution. Id. at 12 (citing United States v. Robles, 37 F.3d 1260, 1264 (7th Cir. 1994)). In particular, Judge Dries agreed that the clothing was inside a closed container, but cited case law holding that if the characteristics of the container and the circumstances under which it was seized "proclaim its contents unambiguously," there is no need for the searching officer to obtain a warrant to search the container's contents. Id. (citing Robles and United States v. Tolbert, No. 11-CR-186, 2012 WL 404875, at *6 (E.D. Wis. Feb. 7, 2012)).

Judge Dries further found that the search of the bags could likely be considered a valid inventory search, as the bags were lawfully seized under the plain-view exception and Rice had testified that it was standard operating procedure to empty the pockets of any clothing seized as evidence. Id. at 13. Judge Dries wrote:

9

> Ultimately, the touchstone of any Fourth Amendment analysis is reasonableness. Here, Detective Rice was not on a fishing expedition seeking evidence of crimes without probable cause. He did not visit other hospital rooms or root around other patients' property. Instead, he limited his visit to a victim of a violent nighttime shooting. He knew from experience and the defendant's own statement that the defendant's clothes were in a bag on the floor, that they likely had evidentiary value with respect to the shooting, and that the victim was set to be moved to a different hospital in the very near future. The desire to obtain and inventory that evidence immediately was obvious and, ultimately, reasonable.

Dkt. No. 27 at 14.

E.   Objection

The defendant objects to the recommendation, arguing that he did not forfeit his possessory interest in his property when he entered the hospital and criticizing Judge Dries for failing to explain how he lost that possessory interest. Dkt. No. 28 at 2. The defendant points out that in both his case and Neely, officers searched bags containing the defendants' clothing, in a hospital, without consent from the defendants who maintained a possessory interest in the property contained in the bags. Id. at 3. The defendant argues that by affirming that the property in the bags was his, he was not waiving his right to privacy, but confirming his property interest. Id. at 4.

The defendant argues that the fact that Rice viewed the defendant as a victim and not a suspect at the time he opened the bags is not relevant, because "[s]uspects have no greater privacy and possessory interests than citizen crime victims." Id. (citing United States v. Davis, 690 F.3d 226, 244 (4th Cir. 2012). The defendant also argues that until Rice undertook to move the white, opaque bags, they were nothing more than white, opaque bags; Rice had to manipulate the bags to determine that they contained evidence, which the defendant argues is a critical distinction under the plain view doctrine. Id. at 5- 6. The defendant asserts that Judge Dries disregarded key differences in the

10

appearance of the defendant's bags versus the appearance of the bags in the cases relied on by the government. Id.

Finally, quoting a dissenting opinion by Ninth Circuit Judge Alex Kozinski, the defendant implies that the plain-view exception is eviscerating the Fourth Amendment's protections. Id. at 6.

**III. Analysis**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amen. IV. The defendant challenges the search and seizure of his property. "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in the property." United States v. Jacobsen, 466 U.S. 109 (1984). Judge Dries recommended that this court deny the defendant's motion to suppress because he concluded that the plain-view exception to the Fourth Amendment's warrant requirement applied; that exception allows law enforcement to "seize an item outside the scope of a search if they were lawfully present when they viewed the item, it was in plain view, and its incriminating nature was 'immediately apparent.'" Bogan v. German, 774 F. App'x 297, 301 (7th Cir. 2019) (citing United States v. Cellitti, 387 F.3d 618, 623-24 (7th Cir. 2004)).

The government made a single argument in opposition to the defendant's motion to suppress. It argued that the plain-view exception to the warrant requirement allowed Rice to seize the contents of the bags. It implicitly conceded that the defendant had a possessory interest in the items in the bags, by admitting that Rice had interfered with that interest. In his briefs, however, the defendant not only argued that the requirements of the plain-view exception had not been met—the issue the government *had* raised—but

11

presented extensive argument on the question of whether the defendant had a possessory interest in the items in the bags—an issue the government had *not* raised, and had implicitly conceded. Despite the government's implicit concession that the defendant had such an interest, the defendant spent considerable energy arguing that he had such an interest, with emphasis on the Fifth Circuit's decision in Neely.

The analysis portion of Judge Dries's recommendation spans ten pages. Nowhere in those ten pages did Judge Dries state that the defendant did not have a possessory interest in the items in the bags. Nowhere in those ten pages did Judge Dries state that the defendant had waived or given up or forfeited his possessory interest in the items contained in the bags. And in only one sentence did Judge Dries address whether the defendant had a *privacy* interest in the content of the bags; at pages 12-13 of his recommendation, Judge Dries concluded that by responding to Rice that the items in the bags were his, the defendant had "directly and explicitly waived his right to privacy." Dkt. No. 27 at 13.

But while the government did not argue that the court ought to deny the motion to suppress because the defendant forfeited his possessory interest in the property upon entering the hospital, and while Judge Dries did not find that the defendant forfeited his possessory interest in the property, the defendant objects to Judge Dries's recommendation on the ground that Judge Dries "set aside the case that provided [the defendant] his better argument, *United States v. Neely,* without addressing its core arguments as applied here: [the defendant] did not forfeit his possessory interest in his property by entering the hospital; thus, Rice's seizure of the bags containing [the defendant's] clothing violated his Fourth Amendment rights." Dkt. No. 28 at 2.

12

The defendant's insistence on arguing that he did not forfeit his possessory rights upon entering the hospital, and his focus on the Neely court's analysis of that issue, is puzzling given the fact that the government did not make that argument and Judge Dries did not base his recommendation on that argument. It becomes even more puzzling if one looks at how the issue arose in Neely.

At the hearing on Neely's motion to suppress, the government "argued that exigent circumstances . . . justified the seizure, and that, alternatively, *Neely lost his privacy interest in the clothing by wearing them in front of hospital personnel and police officers after he was shot.*" Neely, 345 F.3d at 368 (emphasis added). The district court denied the motion to suppress, "concluding that Neely had no reasonable expectation of privacy in his clothes while they were in the hospital's possession, because he voluntarily submitted himself to medical treatment wearing the bloody clothes." Id. at 369.

On appeal, Neely argued that the district court "erred in focusing on whether he had a valid privacy interest in his clothing at the time the police seized them, because the existence of a privacy interest is relevant to the constitutionality of a *search*, not a seizure," and asserted that "an illegal seizure can take place even in the absence of a valid privacy interest in the seized item as long as the defendant establishes that the seizure interfered with his constitutionally protected possessory interests in the property." Id. (emphasis in the original). The Fifth Circuit agreed, finding that the government's arguments that Neely "had no valid possessory interest in the clothing because he abandoned that interest and that the hospital was a joint possessor of the clothing are unavailing." Id. The court cited "[n]umerous" courts that had held "an emergency room patient does not forfeit his

13

possessory rights to clothing simply by walking (or in many cases being carried) through the hospital door." Id.

In stark contrast, in this case the government did not oppose the defendant's motion to suppress on the ground that the defendant had no privacy or possessory right in the contents of the bags, or that he had somehow given up his possessory right to the contents of the bags by wearing them to the hospital. Rather, the government argued that the plain-view exception justified Rice's search of the bags and seizure of the contents—implicitly agreeing that the defendant had a possessory right to the contents of the bags, but asserting that the plain-view exception excused Rice from obtaining a warrant.

Nor did Judge Dries find that the defendant gave up his possessory interest in the items in the bag. Judge Dries never mentioned a possessory interest. Judge Dries stated toward the end of his recommendation that the defendant had waived whatever *privacy* interest he may have had in the items in the bag when he admitted that they were his. But that statement—even if, as the defendant argues, incorrect, dkt. no. 28 at 4[1]—appears to have had little to

---

[1] Judge Dries cited United States v. Cardona-Rivera, 904 F.2d 1149 (7th Cir. 1990) in concluding that the defendant waived his right to privacy by confirming that the items in the bags belonged to him. Dkt. No. 27 at 12-13. The defendant correctly points out that in Cardona-Rivera, Judge Posner found that defendant Luna had explicitly and directly waived his right to privacy in the contents of packages wrapped in plain brown paper and tape because, when asked what was in the packages, Luna replied, "coke." Cardona-Rivera, 904 F.2d at 1156. Judge Posner concluded that "[o]nce Luna admitted that his package contained a contraband substance, no lawful interest of his could be invaded by the officers' opening the packages. . . . No purpose would be served by insisting on a warrant in such a case or by setting aside the conviction because of the absence of a warrant." Id. The court agrees with the defendant that his confirming for Rice that the items in the bag belonged to him was not an explicit or direct statement that the bags contained contraband.

14

do with Judge Dries's analysis of the requirements of the plain-view exception, or with his conclusion that that exception justified Rice's failure to obtain a warrant before opening the bags, searching the contents and seizing some of the contents.

As it happens, the Fifth Circuit in Neely also discussed the plain-view exception. Perhaps realizing that the appellate court might not accept its argument that Neely had forfeited his possessory rights in his clothing, the government argued on appeal that the Fifth Circuit could affirm the district court's denial of the suppression motion "on the basis that police legally seized the clothes pursuant to the plain view doctrine." Id. at 371. The government asserted that "Neely's bloody clothes, evidence of a possible crime, were in plain view of the . . . officers who accompanied the medical personnel into Neely's apartment [to treat him], as well as to the hospital staff who treated Neely upon arrival at [the hospital]." Id. It argued that the officers "could not have seized the clothes while they were actually in plain view because it would have interfered with Neely's medical treatment, so it was only reasonable for them to alert [the police who went to the hospital] so that they could retrieve the clothing after Neely arrived at the hospital." Id.

The Fifth Circuit rejected this argument, equating it to an argument that law enforcement "will be free to seize any object officers have previously seen in plain view," and concluding that "the officer who retrieved the clothes did not have a lawful right of access to the storage room or the plastic bag in which the hospital had stored Neely's clothing." Id.

The Fifth Circuit's treatment of the plain-view exception isn't particularly helpful in this case. The government did not argue to Judge Dries that the plain-view exception applied because law enforcement officers or hospital

15

personnel had seen the defendant in bloody clothes before hospital personnel put them in a bag. Consequently, Judge Dries did not consider that argument. This court does not consider the Neely decision relevant or persuasive in almost any aspect, save one. The court will address that aspect below, in the context of analyzing the requirements of the plain-view exception.

The question this court must decide is not whether the defendant had a privacy interest in the items in the white plastic bags, or whether the defendant had a possessory interest in the items in the white plastic bags. The question is whether, assuming the defendant had both a privacy interest and a possessory interest in the items in the bags, the plain-view exception allowed Rice to open the bags, search the contents and seize some of the contents—all without a warrant. To answer this question, the court must do what Judge Dries did—consider each of the three requirements of the plain-view exception.

The defendant does not dispute Judge Dries's conclusion as to the first requirement of the plain view exception—that Rice had a legal right to be in the place where he observed the bags containing the defendant's clothing (the defendant's room in the emergency unit). Rice was in the emergency room because he had responded to a call asking for assistance with a shooting investigation. As the Sixth Circuited observed in United States v. Clancy, 979 F.3d 1135, 1138 (6th Cir. 2020), "It's hardly surprising—it's indeed expected—that police will respond to emergency departments when shooting victims show up." Rice testified that he was in the emergency room to interview the defendant and gather evidence, including clothing.

The second requirement of the plain-view exception is that the item be in plain view. Cellitti, 387 F.3d at 623. The defendant does not dispute that the white, plastic, opaque bags were in plain view. The bags themselves, however,

16

are not the items the defendant seeks to suppress. The defendant implies that the question isn't whether the *bags* were in plain view, but whether the *contents* of the bags were in plain view. He asserts in his objection that when Rice seized the bags, they were "simply opaque, tied-off hospital bags," and that Rice had to "move" or "manipulate" the bags—open them, really—to see the contents. Dkt. No. 28 at 5-6. He argues that because the contents of the bags—the clothes and other personal items—were not in plain view, the plain-view exception did not justify the search.

This argument requires the court to consider the third requirement of the plain-view exception—whether the incriminating nature of the items inside the bag was immediately apparent. "'For the incriminating nature to be immediately apparent, the officer must have probable cause to believe that the item is contraband or otherwise linked to criminal activity.'" United States v. Schmidt, 700 F.3d 934, 939 (7th Cir. 2012). An item which is "not inherently incriminating" may be seized under the plain-view exception when it "assumes an incriminating or suspicious nature in connection with the crime under investigation." United States v. Van Dreel, 155 F.3d 902, 905 (7th Cir. 1998).

The Seventh Circuit instructs district courts to consider the totality of the circumstances. See United States v. Key, 889 F.3d 910 (7th Cir. 2018) ("When looking at the totality of the circumstances, the officers' testimony that they immediately recognized these items as incriminating is credible. So the discovery and subsequent seizure of the evidence was permissible under the plain view doctrine."). As Judge Dries noted, whether the incriminating nature of the contents of the bags was immediately apparent is heavily dependent on the details of the events surrounding Rice's visit to the ER. Rice was called to the ER to assist in the investigation of a crime—the shooting. It was obvious to

17

Rice on arrival that the defendant was a victim of a crime—he saw the defendant on a gurney in the emergency room, wearing only a hospital gown, with an actively-bleeding gunshot wound on his lower right leg. Dkt. No. 20 at 8, 9, 27. Based on his eighteen years of experience and hundreds of similar investigations, Rice knew that the common practice of local hospitals was to place the shooting victim's clothing in bags off to the side of the room. Id. at 29. He knew that the items in the opaque, white bags belonged to the defendant because the defendant told him so. Id. at 22. He also knew that clothing could contain evidence of the crime in the form of blood, spent casings or bullet fragments or bullet holes. Id. at 11, 12. Rice had been trained at the academy that in a shooting case he must collect the clothing and inventory the contents. Id. at 11, 29. Rice knew that a crime had been committed, because the defendant told Rice that someone had shot him. Ex. 105 at 31 of 35.

These facts made it immediately apparent to Rice that the items in the bags were clothing and personal effects and that they were linked to criminal activity—the shooting. The fact that Rice was not investigating criminal activity by the *defendant* is of no moment; he was investigating a shooting, and the shooting victim's clothing and effects were linked to that shooting.

The Fourth Circuit came to exactly this conclusion in United States v. Davis, 690 F.3d 226 (4th Cir. 2012). In upholding the district court's refusal to suppress the bag of clothing the officer had taken from the hospital room of the shooting victim, the Fourth Circuit agreed that "'the totality of the circumstances, taking into account [the officer's] experience with the hospital's practices regarding patients' property, the appearance of the Defendant at the time [the officer] spoke with him, and the obvious fact that the Defendant had been shot in an area of the body usually covered by clothing' support the

18

Case 2:20-cr-00140-PP   Filed 04/23/21   Page 18 of 20   Document 29

determination that it was a foregone conclusion the bag under [the defendant's] hospital bed contained the clothing he wore when he was shot." Id. at 236. The Fourth Circuit also cited other decisions in which courts had found that an item need not be contraband to be of an incriminating nature, "but instead, an item need only be evidence of a crime."[2] Id. at 237 (citations omitted).

The court previously noted that one aspect of the Neely decision seems similar to the defendant's case. In considering the government's plain view argument, the Neely court said that the officer "who retrieved the clothes did not have a lawful right of access to the storage room *or the plastic bag in which the hospital had stored Neely's clothing.*" Neely, 345 F.3d at 271. It is not clear from this single sentence whether the court meant that the officer did not have lawful access to the bag of clothing because the bag was in a storeroom to which he did not have lawful access. The Neely court simply stated, without further explanation, that the officer did not have lawful access to the bag of clothing. This court has found that unlike the officer in Neely, Rice *did* have lawful access to the bags of clothing because he was lawfully in the ER. The bags were in plain view and the incriminating nature of the contents of the bags—clothing worn by a shooting victim—was immediately apparent.

Rice was not required to obtain a warrant before opening the bags, searching the contents and seizing some of the contents. The court will adopt Judge Dries's recommendation and deny the motion to suppress.

---

[2] The Supreme Court has urged lower courts to apply a "flexible, common sense standard," holding that the officer must have "probable cause to believe that the item may be contraband or stolen property *or useful as evidence of a crime.*" Texas v. Brown, 460 U.S. 730, 742 (1983) (Rehnquist, J., plurality opinion).

## IV. Conclusion

The court **OVVERRULES** the defendant's objection. Dkt. No. 28.

The court **ADOPTS** Judge Dries's recommendation. Dkt. No. 27.

The court **DENIES** the defendant's motion to suppress. Dkt. No. 11.

The court **ORDERS** that by the end of the day on **May 14, 2021**, the parties must file a status report, indicating whether they anticipate resolving the case prior to trial or whether they would like the court to calendar a scheduling conference to discuss dates for a final pretrial conference and trial.

Dated in Milwaukee, Wisconsin this 23rd day of April, 2021.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**